**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**RICHARD HATCH,**

        **Plaintiff,**

**v.**                                        **Civil Action No. 2:07cv104**
                                                  **(Judge Maxwell)**

**DOMINIC A. GUTIERREZ, WAYNE**
**PHILLIPS, LEWIS BRESCOACH,**
**VERONICA FERNANDEZ, DANIEL**
**J. HICKEY AND RENEE CROGAN,**

        **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I.   Factual and Procedural History

The *pro se* plaintiff initiated this civil rights action on December 18, 2007, by filing a civil rights complaint against the above-named defendants pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). In the complaint, the plaintiff alleges that the defendants violated his constitutional rights by denying him appropriate medical care. On January 22, 2008, the plaintiff was granted permission to proceed as a pauper and was assessed an initial partial filing fee. The plaintiff paid his initial partial fee on February 4, 2008.

On February 6, 2008, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal of the complaint was not warranted at that time. Thus, the defendants were directed to file an answer. The defendants did so by filing a Response and Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on June 13, 2008. The Court subsequently issued a Roseboro Notice notifying the plaintiff of his right to file responsive material.

The plaintiff filed a response to the defendants' motion on August 4, 2008. The defendants filed a reply on August 15, 2008, to which the plaintiff filed an unauthorized surrespense on August 26, 2008. The plaintiff further filed a declaration in support of his claims on October 30, 2008. This case is now before the undersigned for a report and recommendation on the aforementioned pleadings of the parties.

## II.   The Contentions of the Parties

### A.   The Complaint

In the complaint, the plaintiff asserts that he arrived at Morgantown Federal Correctional Institution ("FCI-Morgantown") on July 25, 2006. Complaint at 9. At the time, the plaintiff was in severe pain due to a seized lower back. Id. Although the plaintiff informed intake staff that he would not be able to manage a top bunk, the plaintiff was assigned a top bunk anyway. Id. The plaintiff alleges that as a result, he fell to the concrete floor and injured himself numerous times while attempting to negotiate the upper bunk ladder. Id.

The plaintiff was first seen at health services on July 28, 2006. Id. Plaintiffs' pain and difficulties were noted and the plaintiff was scheduled for further evaluation. Id. On August 7, 2006, the plaintiff was seen by MLP Alfonso Blanco ("Blanco"), who assigned the plaintiff a temporary lower bunk. Id. The plaintiff asserts that because this appointment focused on his incapacitating pain, the identification of other medical issues, such as a painful cavity and hemospermia, was precluded. Id.

On August 8, 2006, the plaintiff underwent an admission and orientation ("A&O") briefing. Id. At that meeting, the plaintiff asked his unit counselor, William Layhue ("Layhue"), how to obtain treatment for increasingly severe tooth pain which resulted in the plaintiff's inability to chew

on the right side of his mouth.  Id.  The plaintiff alleges that Layhue told him to chew on the left side of his mouth until he could be seen for his A&O dental exam.  Id.

By October 2006, the plaintiff had not been seen for his A&O dental exam, even though he continued to suffer tooth pain.  Id. at 10.  Therefore, the plaintiff again sought information from Layhue.  Id.  Layhue informed the plaintiff to submit a cop-out requesting an appointment with the dental hygienist.  Id.  The plaintiff asserts that he immediately submitted the suggested cop-out.  Id.

On December 8, 2006, the plaintiff attended medical sick-call complaining of blood in his ejaculate.  Id.  At that appointment, the plaintiff requested to be seen by a Urologist because antibiotics at his prior place of incarceration had been unsuccessful.  Id.  Blanco ordered blood tests for venereal disease, which later came back negative.  Id.  Thus, the Health Services Administrator, Lewis Brescoach ("Brescoach") would not authorize an examination by a specialist.  Id.  The plaintiff asserts that the source of the blood in his ejaculate remains undiagnosed.  Id.

On January 17, 2007, the plaintiff was seen by Daniel Hickey ("Dr. Hickey") for his admission dental screening.  Id.  At that time, the plaintiff was experiencing difficulty concentrating and frequent sleep disruption from the pain in his tooth.  Id.  During the plaintiff's admission screening, Dr. Hickey identified a cavity in plaintiffs' "tooth (#30) and recommended restorative treatment."  Id.

The plaintiff was scheduled for a further dental appointment on January 26, 2007.  Id.  The plaintiff expected that his cavity and pain would be addressed at that appointment.  Id.  However, the plaintiff asserts that the January 26th appointment was for a prophylaxis and his cavity and pain were not otherwise addressed.  Id.  At that appointment, the plaintiff was seen by the same registered dental hygienist who assisted at his first dental appointment.  Id.  The hygienist assured the plaintiff

that his cavity was noted on his chart and that he would receive treatment as soon as the dentist was available.[1] Id.

As time passed, the plaintiff suffered increasing pain and discomfort on the right side on his mouth. Id. at 11. Such pain made it difficult for the plaintiff to eat, sleep or otherwise perform his normal, daily routine. Id. Moreover, as the plaintiff stressed over his alleged lack of medical care, he began experiencing headaches. Id.

On April 17, 2007, the plaintiff attended a dental call-out. Id. However, as time passed and the plaintiff was not seen, Renee Crogan ("Crogan") checked with other staff and discovered that plaintiff had been called-out in error. Id. When informed of the error, the plaintiff explained to Crogan that he had been in pain for months and that he was frustrated with the lack of dental care he was receiving. Id. Crogan reviewed the plaintiff's chart and informed him that the cavity had been noted in his chart, but that it was not noted as urgent. Id. Crogan then advised the plaintiff to report to sick call if he needed immediate attention. Id.

Plaintiff attended sick-call the next morning. Id. At that appointment, the plaintiff complained of severe tooth pain, bloody ejaculate and the recent discovery of occasional blood in his stool. Id. The plaintiff also requested screening by a dermatologist for suspicious skin areas because both his sister and mother had recently had cancerous lesions removed. Id. Blanco allegedly told the plaintiff that he should have had a consult with a dentist months ago. Id. Moreover, Blanco conducted an examination of the plaintiff's anal area and informed the plaintiff that hemorrhoids may have caused the occasional blood in his stool. Id. Nonetheless, given that fact

---

[1] It appears that there was no dentist on staff at FCI-Morgantown at that time and that a dentist was brought in from other institutions whenever possible.

that his maternal grandfather had died of colon cancer at age 42, the plaintiff requested a colonoscopy. Id. Blanco advised the plaintiff that outside consults would have to be approved by Brescoach. Id. Blanco found that the plaintiff's blood pressure was high and ordered follow-up checks. Id.

On May 8, 2007, the plaintiff reported to health services for a scheduled blood pressure check. Id. at 12. At some point, the plaintiff encountered Crogan and informed her that he had reported to sick call as she had suggested, but that he did not receive any treatment for his tooth pain. Id. Crogan referred the plaintiff to Mrs. Dulan to see if he had been issued a dental consult, but Mrs. Dulan told the plaintiff that he would have to speak to Brescoach. Id. The plaintiff met with Brescoach a few minutes later and was allegedly informed that the dental budget had already been exceeded for that year. Id. When plaintiff advised Brescoach that he had no choice but to file an administrative grievance over the denial of medical care, Brescoach informed the plaintiff that his pain could be managed and asked him to file a cop-out before initiating the formal grievance procedure and Brescoach would then see what he could do plaintiff. Id.

The plaintiff submitted a cop-out to Brescoach in the hopes of being treated and to avoid a legal battle. Id. However, by May 21, 2007, Brescoach had not responded to said cop-out. Id. Therefore, the plaintiff filed an informal remedy form. Id. In that grievance, the plaintiff expressed his concerns over the lack of medical care he had been receiving and requested immediate evaluation and treatment for his tooth. Id. at 13.

After not receiving a timely response to his informal grievance, the plaintiff submitted a formal administrative remedy with the Warden. Id. However, that remedy was rejected because it failed to include a copy of the response to the plaintiff's informal remedy. Id. The plaintiff

resubmitted his formal remedy request on June 6, 2007. Id. That remedy was returned by Veronica Fernandez ("Fernandez") through Layhue, but did not explain the reasons for its return, or whether it had been rejected. Id. That same day, the plaintiff submitted an informal remedy concerning his request for a colonoscopy and to see a dermatologist. Id. Blanco arranged for the plaintiff to meet with Brescoach about his request for a colonoscopy and to see a dermatologist. Id. At that meeting, Brescoach informed the plaintiff that he would not authorize a colonoscopy simply because the plaintiff had requested one. Id. Instead, Brescoach told Blanco to conduct three consecutive hemocults. Id. As to the plaintiff's request to see a dermatologist, Brescoach himself inspected one of the plaintiff's suspicious skin areas. Id. Brescoach informed that plaintiff that he would "punch out" the suspect areas and send them for testing. Id. The plaintiff asserts that such testing has not been done. Id.

The plaintiff again met with Brescoach on June 18, 2007. Id. At that meeting, Brescoach agreed to allow the plaintiff to consult with an outside dentist as to his tooth pain. Id. at 14. In addition, Brescoach told the plaintiff that everything possible would be done to save his crown. Id.

On June 20, 2007, the plaintiff received a receipt for the acceptance of his formal remedy request. Id. On June 22, 2007, the plaintiff received a response from Wayne Phillips ("Phillips") which granted the plaintiff the relief requested by agreeing for the plaintiff to have an outside dental consult. Id.

On July 18, 2007, the plaintiff was called to health services for oral surgery. Id. During his surgery, Dr. Hickey sawed the plaintiff's crown in half, destroying it. Id. Dr. Hickey inspected the tooth and informed the plaintiff the tooth could be saved, but that a root canal would likely be required. Id. However, Dr. Hickey also informed the plaintiff that filing the crown might be

sufficient and suggested that first.  Id. at 14-15.  Plaintiff agreed.  Id. at 15.  Dr.  Hickey then

prepared a "tin can," which is a temporary cap on the plaintiff's tooth.  Id.  Dr. Hickey advised the

plaintiff that the "tin can" was only intended to be in place during the time in which it would take

to make a permanent crown, or approximately two weeks.  Id.  Dr. Hickey also advised the plaintiff

that if complications ensued, a root canal would be required.  Id.  Dr. Hickey explained all of the

problems associated with pulling a healthy tooth.  Id.  Dr. Hickey again advised plaintiff that his

tooth was healthy and advised against having it pulled.  Id.  Plaintiff was further advised to contact

Brescoach should any complications arise.  Id.

On July 30, 2007, the plaintiff went to sick-call reporting mouth sores, tooth pain and

discomfort.  Id.  Blanco contacted Brescoach who in turn, contacted Dr. Hickey.  Id.  For several

days the plaintiff remained in pain with no further word from Brescoach.  Id. A week later, the

plaintiff submitted an informal grievance to Brescoach asking for immediate treatment.  Id.  When

Brescoach failed to respond, the plaintiff informed Layhue of the situation.  Id. at 15-16.  Layhue

contacted Brescoach about the plaintiff's grievance and was told that a response would be

forthcoming.  Id. at 16.  Layhue intervened in this matter repeatedly throughout the next couple of

months.  Id.  Eventually, the plaintiff contacted Fernandez and requested her help in resolving the

matter.  Id.  Fernandez informed the plaintiff that he would simply have to wait for Brescoach to

respond.  Id.

On August 16, 2007, the plaintiff did further research on the rules related to administrative

grievances.  Id.  Because he found that no response within the allotted time could allow him to

proceed to the next administrative level, the plaintiff submitted a formal grievance to the Warden.

Id.  After receiving no response from the Warden, the plaintiff filed an administrative appeal on

August 21, 2007.  Id.

The plaintiff was approached by Phillips on August 23, 2007.  Id.  Phillips told the plaintiff that he would speak to Brescoach and get the tooth fixed.  Id. at 17.  Later that day, Layhue gave plaintiff a response to his formal grievance in which the plaintiff was reminded that he must wait for a response to his informal remedy from Brescoach.  Id.  Therefore, the plaintiff's remedy was rejected for failing to first attempt informal resolution.  Id.  Likewise, on August 29, 2007, the plaintiff received a rejection notice from the regional office stating that his administrative appeal was rejected because he first needed to complete his local remedies.  Id.

Subsequently, Layhue continued helping the plaintiff in his attempt to retrieve a response from Brescoach.  Id.  Moreover, on October 26, 2007, Phillips asked the plaintiff to provide him with a detailed description of his efforts to obtain treatment.  Id.  Plaintiff complied with Phillips' request on October 30, 2007.  Id.  Thereafter, Phillips informed the plaintiff that he was working on something and that he would talk with Brescoach.  Id.  Eventually, on November 15, 2007, the plaintiff received a letter from Phillips informing the plaintiff that an examination of his tooth would be performed in the near future.  Id. at 18.  Plaintiff was later informed that the examination would be conducted by the regional dentist.  Id.  Moreover, when Phillips questioned whether plaintiff was still in pain, the plaintiff responded in the affirmative.  Id.  When then asked why he simply did not have the tooth pulled, the plaintiff explained to Phillips that Dr. Hickey had advised against extraction.  Id.

On November 30, 2007, the plaintiff was called to health services where he met with Crogan and an unknown dentist.  Id.  At that meeting, the plaintiff's dental problems were discussed and both Crogan and the new dentist agreed with Dr. Hickey that the best course of treatment was to save

the tooth by performing a root canal.  Id.  It was explained by Crogan that Dr. Hickey had been authorized to perform the root canal, but that FCI-Hazelton would no longer release him to treat inmates at FCI-Morgantown.  Id.  The new dentist also agreed with dr. Hickey that if the tooth were extracted, such procedure could cause teeth drifting.  Id.  Despite his diagnosis and prognosis, the new dentist recommended that the plaintiff have the tooth pulled if the pain became unbearable.  Id.  Ultimately, both Crogan and the new dentist agreed that the plaintiff's best option may simply be to endure the pain during his incarceration and have the tooth treated after his release.  Id.

As a result of the defendants alleged inadequate treatment, the plaintiff asserts that he has suffered pain, uneven tooth wear, headaches, lack of sleep and stress.  Id. at 19.  Moreover, the plaintiff asserts that he is no longer being offered the option of a root canal, and is instead, being offered a tooth extraction, all while leaving the pain untreated.  Id.  Along with this, the plaintiff complains of the undiagnosed blood in his ejaculate and the refusal to allow him to see a dermatologist or to have a colonoscopy.  Id.  For these reasons, the plaintiff seeks declaratory, injunctive, compensatory and punitive relief.  Id. at 20-21.

**B.  The Defendants' Motion to Dismiss or for Summary Judgment**

In response to the complaint, the defendants assert that the plaintiff is not entitled to relief for the following reasons:

(1) A Bivens action cannot be maintained against the federal government and it's agencies;

(2) Defendant Hickey is absolutely immune from suit;

(3) Bivens liability may not be premised on lack of personal involvement;

(4) Bivens liability may not be premised on the theory of *respondeat superior*;

(5) Plaintiff has failed to exhaust his administrative remedies;

(6) Plaintiff fails to establish causes of action against the defendants in their individual capacities for constitutional violations; and

(7) The defendants are entitled to qualified immunity.

## C.   The Plaintiff's Response to the Defendants' Motion

In his response to the defendants' motion, the plaintiff asserts that he would like to "narrow the issues before this Court and to focus on procedures and substance that proximally caused injury to Plaintiff." Response (dckt. 63) at 1. Therefore, the plaintiff requests to dismiss without prejudice, the following claims and defendants:

I. Claims

1. Medical Treatment for complaint of blood in stool;
2. Medical treatment for complaint of blood in ejaculate; and
3. Medical treatment for complaint of shin lesions.

II. Defendants

1. Renee Crogan
2. Dominic A. Gutierrez
3. Wayne Phillips
4. Daniel J. Hickey

Id.

Moreover, the plaintiff asserts that:

1. he has exhausted the administrative remedies that are available to him;

2. he does not wish to maintain an action against the government or any of its agencies, but only against the defendants in their individual capacities;

3. Fernandez is liable "to the extent she failed to coordinate (or hindered) response to Plaintiff's Administrative Remedies containing a request for emergency dental care . . ."

4. although Bivens liability may not be premised solely on *respondeat superior*, a

supervisory official may be liable if the person "created or permitted to continue, the policy or practice pursuant to which the alleged violation occurred or acted recklessly in managing [his or] her subordinates who caused the unlawful incident;" and

5. he has established a violation of the Eighth Amendment.

## D.   The Defendants' Reply

In their reply, the defendants assert that because the plaintiff has voluntarily dismissed several of his claims and defendants, the remaining claims are as follows:

1. Fernandez for personal liability for denying Plaintiff access to the Administrative Remedy Program and her deliberate indifference for failing to obtain or delaying medical care for the plaintiff.

2.   Brescoach for personal liability for his deliberate indifference to plaintiffs' serious medical needs.

In light of those changes, the defendants assert the following:

1.   Plaintiff was not prevented from obtaining any forms necessary to participate in the Administrative Remedy Program;

2.   Plaintiffs' assertion that he "exhausted his Administrative Remedies where they were available to him" is plainly controverted by his Administrative Remedy record; and

3.   The plaintiff has failed to establish a cause of action against the remaining defendants in their individual capacities for deliberate indifference.

## E.   The Plaintiff's Surresponse

In his unauthorized surresponse,[2] the plaintiff again argues that he was prevented from exhausting his administrative remedies and presents additional allegations to support that argument. The plaintiff further asserts that, contrary to what the defendants have said, this claim is supported by the administrative record. Moreover, the plaintiff reiterates his belief that he has established a cause of action against the remaining defendants in their individual capacities.

## F. The Plaintiff's Declaration

In his declaration, the plaintiff asserts that a critical issue in this case is whether extraction of his painful tooth is a recommended treatment. Declaration (dckt. 73) at ¶ 5. Therefore, the plaintiff attaches what he purports is a true and accurate copy of the record from his most recent dental appointment which confirms that the treating dentist would not and has not recommended that tooth #30 be extracted. Id. at ¶¶ 5-7.

## III. Standard of Review

## A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted

---

[2] In answer to a civil complaint, Rule 7 of the Federal Rules of Civil Procedure, in conjunction with Local Rule 7.02, contemplates a motion, a response and a reply. No other pleadings will be accepted without the express order of the court upon a timely motion duly made. In this case, the plaintiff did not seek the required permission to file a surresponse. However, given the plaintiff's *pro se* status, the Court will consider the plaintiff's arguments in his surresponse. Haines v. Kerner, 404 U.S. 519, 520 (1972) (*pro se* pleadings must be construed in a liberal fashion).

under any set of facts that could be proved consistent with the allegations of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.   <u>Motion for Summary Judgment</u>**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  <u>Celotex</u> at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  <u>Id.</u>  This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but  . . .  must set forth specific facts showing that there is

a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV.  Analysis

### A.  Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 548 U.S.81 (2006) (recognizing the PLRA provisions contain a procedural default component).

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where

---

[3] Id.

the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

However, it is widely recognized among the circuits that administrative grievances are not "available" under 42 U.S.C. § 1997(e) when prison officials fail to timely respond to a properly filed grievance. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999); Johnson v. Henson, 2007 WL 135973 (E.D. Cal. Jan. 17, 2007). Thus, those courts have determined that when prison officials fail to respond to properly filed grievances, exhaustion occurs.

Moreover, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms

upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where Plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

Here, the plaintiff filed an informal request for administrative remedy with Brescoach on May 21, 2007, which requested immediate evaluation and treatment to save his tooth. Defendants' Ex. 2, Att. E. In response, Brescoach informed the plaintiff that he would be scheduled for routine dental care the next time such care was available at the institution. Id.

On June 5, 2007, Fernandez rejected a formal administrative remedy filed by the plaintiff because he failed to show that he had first attempted informal resolution and because he did not submit his request in proper form. Ex. 6, Att. A. Fernandez advised the plaintiff that he had five days to resubmit his request in proper form. Id.

On June 19, 2007, Fernandez accepted the plaintiff's administrative remedy asserting a delay or lack of access to dental treatment. Id. at Att. B. The plaintiff's request was assigned remedy number 455054-F1. Id. Moreover, that request was reviewed by Warden Phillips and was granted on June 22, 2007, when it was discovered that Brescoach had scheduled the plaintiff an appointment with Dr. Hickey upon his next visit. Ex. 5, Att. B. The plaintiff was evaluated by Dr. Hickey a few weeks later. Ex. 5 at ¶ 12.

On August 14, 2007, the plaintiff submitted an informal remedy request to Fernandez in which he complained of inadequate dental care for his cavity. Ex. 6 at Att. D. That same day, the plaintiff was informed that his request was forwarded to Dr. Hickey for response and that he would

need to wait for Dr. Hickey's response before filing a formal request.  Id.  Moreover, the plaintiff was advised that it may take longer to receive a response.  Id.

On August 16, 2007, the plaintiff filed a formal administrative remedy requesting a root canal.  Id. at Att. E.  That request was assigned remedy number 463522-F1, Ex. 1 at Att. B, and was rejected by Fernandez because the plaintiff failed to show that he had first attempted informal resolution of his request.  Ex. 6 at Att. 6.  Plaintiff was again advised that his prior request had been sent to Dr. Hickey and that it may take longer for a response.  Id.  In addition, the plaintiff was again advised that he could file a formal remedy request after he received Dr. Hickey's response.  Id.

In August of 2007, Associate Warden Matthew Geyer, informed Dr. Hickey that the plaintiff had made an informal request for resolution of his dental complaints and requested Dr. Hickey provide a detailed response outlining the procedures already undertaken and his professional recommendations.  On August 17, 2007, Dr. Hickey prepared a response to the plaintiff's informal resolution and forwarded such response to Associate Warden Geyer.  Ex. 3 at Att. 3.

On August 23, 2007, the plaintiff appealed remedy number 463522-F1, concerning treatment for his root canal, to the Mid-Atlantic Regional Office.  Ex. 1at Att. B.  Because, however, the plaintiff had yet to receive the Warden's response to his institutional remedy, that submission was rejected for being filed at the wrong level.  Id. at 7.  In the rejection notice, the plaintiff was advised to refile his complaint with staff at FCI-Morgantown.  Id.  Plaintiff did not submit remedy number 463522 for further review.  Ex. 1 at Att. B.

In his response to the defendant's summary judgment motion, the plaintiff asserts that there is no question he engaged in the administrative remedy process with regard to his claims.  Response (dckt. 63) at 2.  Moreover, the plaintiff argues that the defendant's assertion that he failed to exhaust

said remedies is "unsupported by the facts they present and the law upon which they rely." Id. In support of his claim, the plaintiff concedes that 42 U.S.C. § 1997(e)(a) requires a prisoner to exhaust all available remedies with respect to claims related to the conditions of the prisoner's confinement. Id. at 4. However, the plaintiff argues that because Layhue refused to provide him the administrative forms he requested, that the plaintiff effectively exhausted all *available* remedies. Id.

In his Declaration in support of his response, the plaintiff asserts that he discussed his problem of severe tooth pain with Layhue following the filing of his informal remedy request (BP-8.5). Declaration at ¶ 9. Moreover, the plaintiff concedes that Layhue provided him with a formal administrative remedy (BP-9) request form and assisted him in the filing of such form. Id. When that form was rejected because he had not yet received a response to his BP-8.5, Layhue recommended that the plaintiff refile his BP-9, which the plaintiff did. Id. at ¶¶ 10-11. When his second BP-9 was rejected for similar reasons, the plaintiff again sought the assistance of Layhue. Id. at ¶ 12. Layhue advised the plaintiff that he would contact Brescoach to see why the BP-8.5 had not yet been responded to. Id. Soon thereafter, the plaintiff received a response to his BP-8.5. Id. Once he received the response to his BP-8.5, the plaintiff again submitted a BP-9. Id.

On June 18, 2007, the plaintiff was called to Brescoach's office and told that all was being done to assist the plaintiff in receiving appropriate dental care. Id. at ¶ 13. Shortly thereafter, Warden Phillips responded to the plaintiff's BP-9 and confirmed that the plaintiff would be scheduled for outside dental work. Id. at ¶ 14. When the plaintiff later asked Layhue why he had not received the promised appointment, the plaintiff asserts that Layhue mocked him. Id. at ¶ 15. The plaintiff attended a dental appointment on July 18, 2007, at which time Dr. Hickey treated him for his complaints of tooth pain. Id. at ¶ 16. The plaintiff asserts that despite Warden Phillips'

assurances, he was never sent for "outside dental work." <u>Id.</u> at ¶ 17. The plaintiff further asserts that because he relied on Warden Phillips' statements in the previously granted BP-9, he was left with conflicting guidance as to what further avenues to pursue in the administrative remedy procedure. <u>Id.</u> Significantly, however, the plaintiff does not assert that he took any steps to clarify his further administrative remedy responsibilities.

Instead, on July 30, 2007, the plaintiff complained to Brescoach about his severe dental pain. <u>Id.</u> at ¶ 19. In addition, in early August 2007,[4] the plaintiff filed another BP-8.5 for Brescoach with the assistance of Layhue. <u>Id.</u> The plaintiff asserts that Brescoach never responded to his request. <u>Id.</u> Thus, Layhue provided the plaintiff with a BP-9 form and instructed him to file it. <u>Id.</u> at ¶ 24. That form was rejected because the plaintiff had not yet received a response to his informal request. <u>Id.</u> The plaintiff appealed that decision to the regional office by way of a BP-10, however, once again, the plaintiff's administrative appeal was rejected because he had not completed informal resolution before invoking the formal remedy process. <u>Id.</u> at ¶¶ 26-27. The plaintiff asserts that he requested the forms for appealing to the Central Office from Layhue on three separate occasions, but that Layhue refused to provide the forms. <u>Id.</u> at ¶ 28. Thus, the plaintiff asserts that he was prevented from completely exhausting his administrative remedies.

The plaintiff's argument that he exhausted all available remedies is unpersuasive. First and foremost, even assuming that Layhue hindered his access to the administrative remedy process,[5] the

_____

[4] In his declaration, the plaintiff actually states that he filed another BP-8.5 in August of 2009. Declaration at ¶ 20. Obviously that date is incorrect. It appears that the plaintiff meant to say August 2007.

[5] In actuality, according to the plaintiff's own version of events, Layhue not only gave the plaintiff administrative forms on several occasions, but he also advised the plaintiff on the process and helped him secure responses. Moreover, the plaintiff could have sought BP-11 forms from other BOP staff, but failed to do so. <u>See</u> 28 C.F.R. § 542.17(c)(1) (an inmate may obtain administrative remedy

well-established law of exhaustion provides that not only does a prisoner have to exhaust available remedies prior to filing suit, but the prisoner must do so in a procedurally correct manner.  See Woodford v. Ngo, supra.  In this case, it is undisputed that the plaintiff proceeded to formal resolution measures prior to his receiving a response to his informal request to staff.  However, the BOP's procedures clearly call for a prisoner to attempt informal resolution of his issues prior to presenting formal administrative remedies.  See 28 C.F.R. § 542.  Therefore, the BOP's rejection of his BP-9 and BP-10 was appropriate.  Additionally, had the plaintiff received BP-11 forms from Layhue, those remedies likewise would have been rejected.  Thus, even assuming Layhue failed to provide the plaintiff with BP-11 forms, the plaintiff suffered no prejudice as his BP-11 forms would have likewise been rejected and his claims would remain unexhausted.

Moreover, the plaintiff's suggestion that he could bypass the informal remedy process because he did not receive a "timely" response to his informal request to staff is untenable at best.  Pursuant to 28 C.F.R. § 542.13(a) an inmate must attempt to informally resolve an issue of concern by filing a request to staff.  The regulation sets no specific time period in which staff must answer the request, but § 542.14(a) provides that an inmate has 20 days from the date an event occurs to file a formal remedy request with the Warden.  However, that period may be extended where there is an "unusually long time period taken for informal resolution attempts."  See 28 C.F.R. § 542.14(b).  Here, the plaintiff was advised by Fernandez that his formal remedy time would be computed from the date on which his informal remedy request was answered.  See Defendants' Ex. 6, Att. D.  Therefore, the plaintiff was not at risk of being barred from filing his request should the 20 days run prior to his informal response.  In fact, Associate Warden Geyer even pushed Dr. Hickey to respond

---

forms from CCC staff or "institution staff (*ordinarily*, the correctional counselor))" (emphasis added).

to the plaintiff's informal request in a timely manner. All in all, the plaintiff filed his informal request in early August 2007, and with the assistance of Associate Warden Geyer, that request was responded to on August 17, 2008. See Ex. 3 at Att. A. At best, 17 days elapsed between the time the plaintiff filed his informal request and the time said request was answered. Considering that the plaintiff's request had to be forwarded to Dr. Hickey at another institution, 17 days is hardly an excessive delay. Moreover, given that Fernandez advised plaintiff that he would have 20 days from the date a response was received, the plaintiff had ample time to file his formal request to the Warden. The plaintiff simply chose to follow an inappropriate path. Thus, even assuming that Layhue hindered the plaintiff's ability to file a BP-11, the plaintiff cannot be deemed to have exhausted his available remedies because he did not follow the appropriate procedures for doing so. Thus, the plaintiff's remaining claim of deliberate indifference against Fernandez and Brescoach is not exhausted and should be dismissed for that reason.

Notwithstanding the failure to exhaust administrative remedies, the plaintiff's complaint also fails to state a claim for which relief may be granted and should also be dismissed for that reason.

## B. Deliberate Indifference to Serious Medical Needs[6]

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a

---

[6] In his Response to the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, the plaintiff states that he has no wish to maintain an action against the United States or it agencies and that his claims are against the defendants solely in their individual capacities, see Response (dckt. 63) at 8, thus mooting the defendants's argument that the plaintiff's official capacities claims should be dismissed.

basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show

deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

### 1. Defendant Fernandez

In his pleadings, the plaintiff asserts that Fernandez was deliberately indifferent to his serious medical needs by failing to coordinate responses to the plaintiff's administrative remedies concerning the alleged lack of medical attention at issue in this case. See Plaintiff's Response (dckt. 63) at 8. However, an individual's involvement in the coordination or denial of an inmate's administrative remedy complaints related to his medical treatment, is not the type of personal involvement required to state a Bivens claim for deliberate indifference to serious medical needs. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003). Thus, the plaintiff has failed to state a valid Eighth Amendment claim against defendant Fernandez.

### 2. Defendant Brescoach

In the complaint, the plaintiff asserts that he spoke with Brescoach about his dental pain on May 8, 2007. Complaint at 12. Brescoach allegedly told the plaintiff that his pain could be managed and told the plaintiff he would "see what he could do." Id. When he did not hear back in two weeks, the plaintiff filed an informal remedy with Brescoach which sought medical treatment for his tooth pain. Id. at 12-13. The plaintiff asserts that he never received a response from Brescoach. Id. at 13. However, on June 18, 2007, Brescoach met with the plaintiff to discuss his dental problems. Id. at 13-14. Brescoach agreed to have plaintiff seen by a dentist and to do all he could to help plaintiff

save his dental work.  Id. at 14.  The plaintiff was seen by a dentist on July 18, 2007.  Id.  On July 30, 2007, when the plaintiff complained of mouth sores, continued pain and discomfort, Brescoach contacted Dr. Hickey on the plaintiff's behalf.  Id. at 15.  When the plaintiff heard nothing further from Brescoach, he filed another informal remedy request.  Id.  The plaintiff asserts that he never received a response to that request.  Id.  Moreover, in his response to the defendants' motion, the plaintiff asserts that as the Health Services Administrator, and because he was aware of the plaintiff's severe dental pain, Brescoach was "certainly in position and is most likely the individual who was responsible for the conduct complained in as much as (sic) he . . . was the individual in charge of all policies and practices with respect to the dental care of inmates."  Response (dckt. 63) at 9.

Although it is clear that Brescoach was aware of the plaintiff's dental pain, it is also clear that the plaintiff has failed to establish that Brescoach showed a wanton disregard for such pain.  Even assuming that the plaintiff has established that he had a serious medical need,[7] the plaintiff's own pleadings confirm that Brescoach attempted to help the plaintiff gain access to the appropriate treatment.  Moreover, the plaintiff's complaint against Brescoach appears to center on two arguments:  1) lack of response to the plaintiff's informal remedy requests, and 2) supervisory liability.  However, as previously noted, a response, or lack there of, to an informal administrative remedy request, is insufficient to establish an Eighth Amendment deliberate indifference claim.  See Paige v. Kupec, supra.

As to supervisory liability, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows

---

[7] In their memorandum in support of their motion, the defendants suggest that the plaintiff dental requests do not rise to the level of a "serious medical need."  Memorandum (dckt. 52) at 31.

that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id. In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. Id.

In this case, the plaintiff has not provided any evidence that Brescoach tacitly authorized or was indifferent to an alleged violation of his constitutional rights. Just the opposite is true. Brescoach met with the plaintiff to discuss his dental problems, scheduled him to see the dentist, and spoke with and consulted with the dentist as to the plaintiff's treatment. At best, the plaintiff asserts that Brescoach failed to send him to an outside dentist. However, the plaintiff has not established that such was necessary nor is he entitled to such treatment simply because he requests it. See Estelle v. Gamble, 429 U.S. at 107 ("A medical decision not to order an X-ray or like measures, does not represent cruel and unusual punishment."); Wright v. Collins, 766 F.2d at 849 (a disagreement between an inmate and his doctor over what constitutes appropriate medical care does not state a claim of deliberate indifference). Accordingly, the plaintiff has failed to establish that Brescoach

was deliberately indifferent to his serious medical needs and Brescoach is due to be dismissed as a defendant in this action.

## V.   Recommendation

For the foregoing reasons, the undersigned recommends the following:

1.  The plaintiff's request to dismiss without prejudice, his claims regarding treatment for blood in the stool, blood in the ejaculate and his skin lesions, be **GRANTED** and those claims be **DISMISSED WITHOUT PREJUDICE**.

2.   The plaintiff's request to dismiss without prejudice, defendants Crogan, Gutierrez, Phillips and Hickey, be **GRANTED** and those defendants be **DISMISSED WITHOUT PREJUDICE**.

3.  The defendants Motion to Dismiss or for Summary Judgment (dckt. 46) be **GRANTED to the extent** that it seeks summary judgment for defendants Fernandez and Brescoach. Judgment is granted for defendants Fernandez and Brescoach and those defendants are **DISMISSED WITH PREJUDICE**.

4.  The Clerk be directed to STRIKE this case from the active docket of this Court.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any  objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.   28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, supra; United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert.

denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: November 10, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE